UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                  :

SPORT DIMENSION, INC.,               :

             Plaintiff,        :

                 :

        -v-           :        26 Civ. 3944 (JPC)

                 :

THE INDIVIDUALS, CORPORATIONS, LIMITED  :      OPINION AND ORDER
LIABILITY COMPANIES, PARTNERSHIPS, AND   :
UNINCORPORATED ASSOCIATIONS IDENTIFIED  :
ON SCHEDULE A TO THE COMPLAINT,     :

                 :

          Defendants.    :

                 :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiff Sport Dimension, Inc. brings this action for trademark infringement under 15

U.S.C. § 1114 and false designation of origin under 15 U.S.C. § 1125(a) against thirteen online

sellers.  Sport Dimension now moves *ex parte* against twelve of them (collectively, "Defendants")[1]

for: (1) a temporary restraining order ("TRO") enjoining Defendants' infringing activities; (2) a

temporary freeze of Defendants' assets; (3) expedited discovery; (4) authorization to serve process

by electronic means; and (5) leave to file certain documents under seal.  For the reasons set forth

below, the Court grants Sport Dimension's motion in part and denies it in part.

## I. Background

Sport Dimension owns U.S. Trademark Registration No. 4,819,802 (the "PADDLE PALS

Mark"), Dkt. 25 ("Paragoso Decl.") ¶ 5; *see* Dkt. 20 ("Am. Compl."), Exh. 1 (trademark

registration), and is the sales, marketing, design, and distribution entity for PADDLE PALS

---

[1] Sport Dimension brings this action against thirteen defendants, who are listed in Schedule
A of the sealed Amended Complaint, but is not seeking a temporary restraining order against the
first defendant listed.  Dkt. 33.

branded products worldwide.  Paragoso Decl. ¶ 3.  As explained by a consultant for Sport Dimension, the PADDLE PALS personal flotation device is a U.S. Coast Guard-approved learn-to-swim aid or life jacket consisting of a vest and attached arm bands designed for teaching children to swim.  *Id.* ¶ 4.  Sport Dimension has expended substantial time, money, and resources developing, advertising, and otherwise promoting the PADDLE PALS Mark.  *Id.* ¶ 9.

Sport Dimension alleges that Defendants, through commercial websites and marketplace listings on Walmart and Temu, are selling flotation devices with marks that are identical to the PADDLE PALS Mark.  Dkt. 26 ("Sealed Am. Compl.") at 19-20; *see* Paragoso Decl. ¶¶ 10-11; Dkt. 28 ("Infringing Screenshots") (sealed Exhibit 2 to the Amended Complaint with screenshots showing Defendants marketing flotation devices).  Defendants do not conduct business with Sport Dimension and have not been authorized to use the PADDLE PALS Mark.  Paragoso Decl. ¶¶ 11-13.  Sport Dimension contends that Defendants employ search engine optimization tactics and social media spamming to cause their listings to appear at or near the top of search results for genuine PADDLE PALS products, thereby diverting consumers to Defendants' infringing products.  *Id.* ¶ 14.

Despite operating under different fictitious names and aliases, many of the Defendants' websites and marketplace listings exhibit common features such as similar website layouts, similar product listing irregularities, shared registration patterns, similarly named servers, use of the same text and images, and common metadata, which, according to Sport Dimension's consultant, suggests that the vendors may be involved in a common counterfeiting operation.  *Id.* ¶ 16; *see generally* Infringing Screenshots.  In an attempt to locate Defendants' physical addresses, investigators working at Sport Dimension's direction visited the seller profile page associated with each Defendant and searched the address listed on that page in Google Maps.  *See, e.g.*, Dkt. 31 ("Mu Supp. Decl.") ¶¶ 3-4.  All addresses on Defendants' seller profile pages were in either China

or Hong Kong. *See* Dkts. 24 ("Mu Decl."), 27 (sealed Exhibit 1 to the Mu Declaration showing Defendants' listed physical addresses); *see also* Infringing Screenshots at 2-13 (listing for each Defendant a "Seller Origin" of "China"); Mu Supp. Decl. ¶¶ 3-5 (explaining that information regarding the "Seller Origin" on the Infringing Screenshots came from Defendants' storefronts on the e-commerce websites). Based on the information available on Google Maps, however, Sport Dimension does not believe that any of these addresses are in fact associated with Defendants. *See* Mu Supp. Decl. ¶¶ 3-4.

On May 12, 2026, Sport Dimension initiated this action by publicly filing a Complaint that did not identify any defendants, but indicated only that the defendants were "The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Scheduled A to the Complaint." Dkt. 1. Although the public version of the original Complaint lacked a Schedule A, on May 15, 2026, Sport Dimension filed under seal a version of its Complaint listing seventy-two defendants in a table with the header "Schedule A." Dkt. 13 ("Sealed Orig. Compl.") at 26-28. That table listed each defendant's "Seller Alias," the e-commerce platform on which the defendant was selling its products (*i.e.*, Amazon, Walmart, or Temu), and the defendant's "Seller ID." *Id.* That same day, Sport Dimension also moved *ex parte* for a TRO against these seventy-two defendants, as well as for an order allowing expedited discovery and alternative service. Dkts. 9-10. Sport Dimension filed two declarations and two exhibits under seal in support of its motions, Dkts. 11-12, 14-15, along with a related sealing motion, Dkt. 9.

On May 18, 2026, the Court directed Sport Dimension to submit additional evidence or briefing in support of its motions by May 22, 2026, and scheduled an *ex parte* hearing for May 27, 2026. Dkt. 17. After Sport Dimension failed to make a supplemental submission by the deadline, on May 26, 2026, the Court directed Sport Dimension to make such submission by May 27, 2026,

and adjourned the hearing to May 29, 2026.  Dkt. 18.  On May 27, 2026, Sport Dimension filed a supplemental brief stating that it wished to pursue a TRO against only thirty-five of the seventy-two online sellers listed as defendants in Schedule A to its sealed original Complaint.  Dkt. 19 at 1.

At the May 27 *ex parte* hearing, Sport Dimension indicated a desire to make a further supplemental submission.  Then, on June 5, 2026, Sport Dimension filed (1) publicly an Amended Complaint which, like the publicly filed version of its initial Complaint, did not include the names of any defendants, Dkt. 20; (2) under seal a version of the Amended Complaint with an updated "Schedule A," Dkt. 26; (3) renewed *ex parte* motions for a TRO, expedited discovery, and alternative service via electronic means as to the defendants listed in Schedule A, Dkts. 21-23; (4) declarations and exhibits in support of those motions, Dkts. 24-25, and (5) under seal Exhibit 2 to the Amended Complaint, Dkt. 28, and Exhibit 1 to the Declaration of Sport Dimension's attorney, Shengmao Mu, at Docket Number 24, Dkt. 27.  Although Sport Dimension's initial Complaint was brought against seventy-two online sellers, only thirteen of them were named as defendants in the Amended Complaint.  *Compare* Sealed Orig. Compl. at 26-28, *with* Sealed Am. Compl. at 19-20.  In the Amended Complaint, Sport Dimension brings two causes of action: (1) "Trademark Infringement and Counterfeiting" under 15 U.S.C. § 1114, Am. Compl. ¶¶ 38-47; Sealed Am. Compl. ¶¶ 38-47, and (2) "False Designation of Origin, Passing Off [and] Unfair Competition" under 15 U.S.C. § 1125, Am. Compl. ¶¶ 48-53; Sealed Am. Compl. ¶¶ 38-47.

After reviewing these latest submissions, on June 10, 2026, the Court ordered Sport Dimension to appear at a conference the next day, June 11, 2026, to discuss "how Sport Dimension identified any physical addresses for Defendants that it attempted to locate through Google Maps."  Dkt. 30.  The day after the conference, Sport Dimension filed under seal a supplemental declaration from its counsel, Mr. Mu, and three supporting exhibits providing further information about its efforts to locate Defendants' physical addresses.  Dkt. 31.  Another day later, on June 13, 2026, the

4

Court ordered Sport Dimension to submit a letter addressing, among other things, "which of the 13 Defendants named in the Amended Complaint [it] continue[d] to seek a [TRO] against."  Dkt. 32.  On June 15, 2026, Sport Dimension submitted a letter stating that it is no longer seeking a TRO against the first of the thirteen online sellers listed in Schedule A of its sealed Amended Complaint.  Dkt. 33.[2]

## II.  Legal Standards

### A.    Temporary Restraining Order

"It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).  To obtain a preliminary injunction, a party generally must demonstrate "(1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." *Kickham Hanley P.C. v. Kodak Ret. Income Plan*, 558 F.3d 204, 209 (2d Cir. 2009) (internal quotation marks omitted).  If these factors have been satisfied, a temporary restraining order may issue, but "the movant [must] give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c); *see also* 15 U.S.C. § 1116(d)(5)(D) ("An order under this subsection shall set forth . . . the amount of security required to be provided under this subsection.").

Federal Rule of Civil Procedure Rule 65(b)(1) further provides that a "court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and

---

[2] Sport Dimension also attached to this letter a copy of the sealing motion it filed on June 5, 2026.  Dkt. 33-2.

irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." *Ex parte* TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bd. of Teamsters & Auto Truck Drivers Loc. No. 70*, 415 U.S. 423, 439 (1974).

## B.    Expedited Discovery

"A party may seek expedited discovery before the Federal Rules of Civil Procedure Rule 26(f) conference when authorized by a court order." *Next Phase Distrib., Inc. v. John Does 1-27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012). "In this District, courts use a flexible standard of reasonableness and good cause when considering whether to grant such an order." *Id.* (internal quotation marks omitted).

## C.    Alternative Service of Defendants Outside the United States

Under Federal Rule of Civil Procedure 4(h)(2), a corporation may be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Rule 4(f)(3), in turn, provides that "an individual . . . may be served at a place not within any judicial district of the United States" by "means not prohibited by international agreement, as the court orders."

Relevant here, China and Hong Kong are signatories to a treaty "commonly referred to as the 'Hague Service Convention,'" which "over eighty-five countries have signed onto." *Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 166 (2d Cir. 2025); *see Henry Haining Zhang v. Kon Ki Lo*, No. 14 Civ. 6945 (CM), 2020 WL 2133163, at *1 (S.D.N.Y. May 5, 2020) (discussing "the Hague Convention on Service of Process, to which China and Hong Kong are both signatories"). "[E]mail service . . . is prohibited by the Hague Service Convention."

*Smart Study*, 164 F.4th at 172.  "[T]he [Hague Service] Convention does not apply," however, when "the address of the person to be served with the document is not known." *Id.* at 168 (internal quotation marks omitted).  "Courts in this Circuit and in others have concluded that an address is 'not known' 'if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so.'" *Foxmind Canada Enters. Ltd. V. APROAT*, No. 25 Civ. 5837 (JSR), 2026 WL 412645, at *3 (S.D.N.Y. Feb. 13, 2026) (quoting *Kelly Toys Holdings, LLC v. Top Dep't Store*, No. 22 Civ. 558 (PAE), 2022 WL 3701216, at *6 (S.D.N.Y. Aug. 26, 2022)).  Reasonable diligence, in turn, requires that a plaintiff "actively, though unsuccessfully, attempted to obtain [a defendant's] address in a variety of ways." *Prediction Co. v. Rajgarhia*, No. 09 Civ. 7459 (SAS), 2010 WL 1050307, at *2 (S.D.N.Y. Mar. 22, 2010).

### D.     Sealing

"The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).  When parties seek to temporarily seal filings in cases seeking emergency relief for counterfeiting, however, courts in this District routinely grant such requests.  *See, e.g.*, *Wowwee Grp. Ltd. v. Meirly*, No. 18 Civ. 706 (AJN), Dkt. 7 (S.D.N.Y. Feb. 5, 2018); *Allstar Mktg. v. GB Housewear Store*, No. 17 Civ. 7596 (SHS), Dkt. 22 (S.D.N.Y. Oct. 12, 2017); *see also In re: Vuitton et Fils S.A.*, 606 F.2d 1, 4-5 (2d Cir. 1979) ("[N]otice all too often appears to serve only to render fruitless further prosecution of the action.").  Indeed, 15 U.S.C. § 1116(d)(8) specifically contemplates that in an action seeking injunctive relief arising out of the alleged use of counterfeit marks, a court order, "together with the supporting documents, shall be sealed until the person against whom the order is directed has an opportunity to contest such order, except that any person against whom such order is issued shall have access to such order and supporting documents after the seizure has been carried out."

### III. Discussion

**A.    Temporary Restraining Order**

Sport Dimension has demonstrated both a likelihood of irreparable harm in the absence of a TRO and a likelihood of success on the merits with respect to the twelve Defendants against which it seeks temporary injunctive relief.  Where, as here, a plaintiff seeks emergency relief to restrain violations of the Lanham Act, the analysis of these two factors merges because such a plaintiff is "entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits."  15 U.S.C. § 1116(a).

To establish a sufficient likelihood of success on a claim for trademark infringement or false designation of origin, a plaintiff must show that its mark is valid and entitled to protection and that the defendant's use of the mark is likely to cause confusion.  *Christian Louboutin S.A. v. Yves Saint Laurent American Holdings, Inc.*, 696 F.3d 206, 216-17 (2d Cir. 2012).[3]  As to the first of those two requirements, a certificate of registration with the United States Patent and Trademark Office "is prima facie evidence that the mark is registered and valid (*i.e.*, protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce."  *Id.* at 216 n.10 (citation modified).  Sport Dimension has received a certificate of registration for the PADDLE PALS Mark, Paragoso Decl. ¶ 5; Am. Compl., Exh. 1, so based on

---

[3] The first cause of action in the Amended Complaint is purportedly for trademark infringement and counterfeiting, *see* Am. Compl. at 12; Sealed Am. Compl. at 13, but under the Lanham Act, "'[t]rademark counterfeiting' is not a unique cause of action; it is simply a form of trademark infringement accomplished through the use of a counterfeit."  *Athena Cosms., Inc. v. AMN Distrib. Inc.*, No. 2:20 Civ. 5526 (SVW), 2022 WL 4596549, at *10 (C.D. Cal. Aug. 16, 2022).  A counterfeit is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  An infringing mark is not a "counterfeit" if a consumer "would recognize the differences between [the infringing mark and the legitimate mark] from a cursory visual inspection."  *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314-15 (2d Cir. 2013).  Although proof of the defendant's "*intent* is not required" to establish counterfeiting, the defendant must know the mark is a counterfeit.  *Chrome Hearts LLC v. Controse Inc.*, No. 21 Civ. 6858 (LJL), 2023 WL 5049198, at *12 (S.D.N.Y. Aug. 8, 2023).

the current record, Sport Dimension is likely to succeed in proving the first prong of its Lanham Act claims.

In assessing the second requirement of likelihood of confusion, courts in the Second Circuit look to the factors set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961), including "the strength of [the plaintiff's] mark, the degree of similarity between the two marks, the [competitive] proximity of the products, the likelihood that the prior owner will bridge the gap [and start selling similar products as the defendant], actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers." *Id.* at 495; *see Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F. 2d 1072, 1077 (2d Cir. 1993) ("The *Polaroid* factors are not dispositive, and additional factors may be considered or initial factors abandoned."). But "[w]here the [parties'] marks are identical, and the goods are also identical and directly competitive, [a] decision [on likelihood of confusion] can be made directly without a more formal and complete discussion of all of the *Polaroid* factors." *Topps Co. Inc. v. Gerrit J. Verburg Co.*, No. 96 Civ. 7302 (RWS), 1996 WL 719381, at *6 (S.D.N.Y. Dec. 13, 1996); *cf. Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("[T]he Court need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion."). This reflects the commonsense notion that "[p]lacing an identical mark on identical goods creates a strong likelihood of confusion." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 429 (9th Cir. 2017).

Sport Dimension has shown that it is likely to succeed in proving a likelihood of confusion as to each Defendant. Seven of the Defendants—Defendants 2, 4, 5, 6, 9, 10, and 13 in Schedule A of the sealed Amended Complaint—advertise their products using the words "Paddle Pals," and thus are using a mark that is identical to Sport Dimension's registered PADDLE PALS Mark. *See* Infringing Screenshots at 3, 5-7, 10-11, 14. Additionally, each of these eight Defendants use this

mark to advertise flotation devices for children, *id.*—the exact product that Sport Dimension sells using its PADDLE PALS Mark, Paragoso Decl. ¶ 4.  So as to these eight Defendants, the Court finds a likelihood of confusion "without a more formal and complete discussion of all of the *Polaroid* factors."  *Topps Co.*, 1996 WL 719381, at *6.

The five other Defendants—Defendants 3, 7, 8, 11, and 12 in Schedule A of the sealed Amended Complaint—use the similar, but not exactly identical, words "Paddle Pal" to advertise flotation devices for children.  Infringing Screenshots at 4, 8-9, 12-13.  That is to say, these Defendants use the singular "Pal" instead of the plural "Pals" in identifying their products.  Upon consideration of the *Polaroid* factors, the Court concludes that Sport Dimension has shown that it is likely to succeed in establishing a likelihood of confusion.  In terms of the strength of the mark, the PADDLE PALS Mark is suggestive because it "suggest[s] (rather than directly describe[s]) the product on which [it is] employed."  *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 121 (2d Cir. 2022).  Additionally, the words "Paddle Pal" are very similar to the words "Paddle Pals," the competitive proximity of the products is extremely high because these five Defendants and Sport Dimension are all selling flotation devices for children, and the sophistication of the buyer is relatively low because the average consumer is likely a parent unversed in small distinctions among otherwise highly similar child flotation devices.  All these factors weigh in favor of a strong likelihood of confusion.

The balance of hardships and the public interest also weigh in favor of issuing a TRO.  "To the plaintiff its name is at stake, and continued injury to its reputation and good will would be a far more serious blow to it than the curtailment of the sale by the defendants would be to them."  *Estee Lauder, Inc. v. Watsky*, 323 F. Supp. 1064, 1068 (S.D.N.Y. 1970).  An injunction would also serve the public interest, as the public has compelling interests in safeguarding the rights of trademark owners and in protecting consumers from confusion.  *See Hermes Int'l v. Lederer de*

*Paris Fifth Ave., Inc.*, 219 F.3d 104, 107-08 (2d Cir. 2000) ("Trademark laws exist to protect the public from confusion."); *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) ("[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality."); *see also WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) ("[T]he public has a compelling interest in protecting copyright owners' marketable rights to their work.").

The Court also finds it appropriate for the TRO to include a temporary freeze of Defendants' assets. "While a court may not freeze assets solely to secure a future money judgment, where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets." *Cengage Learning, Inc. v. Doe 1*, No. 18 Civ. 403 (RJS), 2018 WL 2244461, at *3 (S.D.N.Y. Jan. 17, 2018) (citation modified). The Lanham Act allows plaintiffs, "subject to the principles of equity, to recover . . . [a] defendant's profits," 15 U.S.C. § 1117(a), so "[c]ourts in this district have exercised their equitable powers in Lanham Act cases to restrain assets to preserve the return of profits derived from the sale of [infringing] goods," *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12 Civ. 6283 (AJN), 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012) (collecting cases).

Finally, Sport Dimension has shown why notice should not be required in advance of temporarily enjoining Defendants' activities. *See* Fed. R. Civ. P. 65(b)(1). According to Sport Dimension, "infringers like Defendants monitor PACER for new federal filings . . . for the purpose of being able to move assets from their financial accounts to offshore bank accounts outside the jurisdiction of this Court and evade civil liability." Mu Decl. ¶ 8; *see also id.* ¶ 6 ("Defendants will often register new e-commerce stores under new aliases once they receive notice of a lawsuit."). Thus, if notice were required before issuance of a TRO, Defendants "are likely to hide, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of . . . infringing

11

products." *Weili Fang & Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, No. 21 Civ. 370 (JPO), 2021 WL 1249631, at *2 (S.D.N.Y. Apr. 5, 2021).

Thus, the Court grants Sport Dimension's motion for a TRO against Defendants, which, to reiterate, are the second through thirteenth defendants listed in Schedule A to the sealed Amended Complaint.

### B.    Expedited Discovery

The Court finds there is good cause to grant Sport Dimension's request for expedited discovery from Defendants.  Sport Dimension seeks expedited discovery "to identify the true names, contact information, and financial accounts Defendants use for their operations."  Dkt. 23 at 14.  "[S]uch relief is routinely granted" where, as here, "a party seeks injunctive relief in a trademark infringement case against unidentified parties." *Everytown for Gun Safety Action Fund, Inc. v. Defcad, Inc.*, No. 21 Civ. 8704 (PGG), 2021 WL 5232581, at *1 (S.D.N.Y. Nov. 9, 2021).  Here, that expedited discovery may provide information that will allow Sport Dimension to identify addresses to serve Defendants and to identify Defendants' assets.

### C.    Alternative Service

The Court denies Sport Dimension's motion for electronic service to the email addresses associated with Defendants' e-commerce accounts.  Although "the [Hague Service] Convention does not apply" when "the address of the person to be served with the document is not known," *Smart Study*, 164 F.4th at 168, Sport Dimension has not shown that Defendants' addresses are "not known" because it has not "exercised reasonable diligence in attempting to discover [Defendants'] physical address[es]," *Foxmind Canada Enters.*, 2026 WL 412645, at *3 (internal quotation marks omitted).  To be sure, Sport Dimension has searched on Google Maps for the physical addresses listed on Defendants' seller profile pages, but more effort is needed to show reasonable diligence. *Cf. TushBaby, Inc. v. Jinjang Kangbersi Trade Co.*, No. 24 Civ. 6150 (JMF), 2025 WL 358409, at

*1 (S.D.N.Y. Jan. 31, 2025) ("Courts have found [the reasonable diligence] standard met where, for example, the plaintiff searched websites associated with the defendant's domain names, completed internet searches, *and attempted to visit the defendant's domicile in person*." (emphasis added)).   Indeed, those cases where courts have found that plaintiffs acted with reasonable diligence entailed attempts "to obtain [a defendant's] address in a variety of ways," *Prediction Co.*, 2010 WL 1050307, at *2.  *See, e.g.*, *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, No. 24 Civ. 744 (JLR), 2024 WL 2317715, at *3 (S.D.N.Y. May 22, 2024) ("Plaintiffs asked [the defendant's] counsel for this information and searched publicly available records using Google, Baidu, and the PRC Ministry of Public Security's database."); *Microsoft Corp. v. Does 1-2*, No. 20 Civ. 1217 (LDH) (RER), 2021 WL 4755518, at *3 (E.D.N.Y. May 28, 2021) ("After extensive investigation and subpoenas to the relevant domain registrars and email providers, [the plaintiff] has been unable to determine additional means of communicating with Defendants."), *report and recommendation adopted*, 2021 WL 4260665 (E.D.N.Y. Sept. 20, 2021); *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14 Civ. 1112 (VSB), 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018) ("Plaintiff[]s researched the . . . websites associated [the defendant's] Domain Names, completed multiple Internet-based searches, called known phone numbers, and conducted in-person visits where reasonable.").  Sport Dimension has not done that here.  Sport Dimension does not represent having taken any steps to identify Defendants' addresses aside from conducting a single Google Maps search for each Defendant, nor does Sport Dimension explain why the results of those searches lead to the conclusion that Defendants' listed addresses are not viable.  *See* Mu Supp. Decl. ¶¶ 3-4.

Since Sport Dimension has not exercised reasonable diligence in attempting to discover Defendants' addresses, it has not shown that Defendants' addresses are "not known," and, thus, the Hague Convention applies.  *See Smart Study*, 164 F.4th at 168.  "[E]mail service . . . is prohibited

13

by the Hague Service Convention," *id.* at 172, so Sport Dimension's motion for service by email is denied without prejudice to Sport Dimension renewing the application with a showing of reasonable diligence.

### D.      Sealing

Finally, for reasons similar to why the Court issues the TRO without notice to Defendants, the Court grants Sport Dimension's motion to temporarily seal its submissions that identify Defendants by name.  As discussed above, Sport Dimension has averred that "infringers like Defendants monitor PACER for new federal filings . . . for the purpose of being able to move assets from their financial accounts to offshore bank accounts outside the jurisdiction of this Court and evade civil liability."  Mu Decl. ¶ 8; *see also id.* ¶ 6 ("Defendants will often register new e-commerce stores under new aliases once they receive notice of a lawsuit.").  Faced with similar facts, courts in this District routinely grant motions for temporary sealing in order to prevent defendants from transferring away the proceeds of their infringing activity.  *See, e.g.*, *Wowwee Grp.*, No. 18 Civ. 706 (AJN), Dkt. 7 (S.D.N.Y. Feb. 5, 2018); *Allstar Mktg.*, No. 17 Civ. 7596 (SHS), Dkt. 22 (S.D.N.Y. Oct. 12, 2017); *see In re: Vuitton et Fils S.A.*, 606 F.2d at 4-5 ("[N]otice all too often appears to serve only to render fruitless further prosecution of the action."); 15 U.S.C. § 1116(d)(8) (providing that a court order, "together with the supporting documents, shall be sealed until the person against whom the order is directed has an opportunity to contest such order, except that any person against whom such order is issued shall have access to such order and supporting documents after the seizure has been carried out").  The Court, however, grants limited unsealing to the extent necessary for Sport Dimension to execute the terms of the TRO detailed below.

### IV.  Relief

For the reasons set forth above, in accordance with Rule 65 of the Federal Rules of Civil Procedure, it is hereby ordered that:

**Temporary Restraints**

1.          Defendants—which are the second through thirteenth defendants listed in Schedule A of the sealed Amended Complaint, Dkt. 26 at 19-20—are temporarily enjoined and restrained from engaging in any of the following conduct:

a.          manufacturing, advertising, offering for sale, selling, distributing, destroying, selling off, transferring, or otherwise disposing of any products that have been advertised using the words "Paddle Pals" or "Paddle Pal" (the "Infringing Products");

b.          manufacturing, advertising, offering to sell, selling, reproducing, or distributing any goods utilizing the PADDLE PALS Mark (U.S. Trademark Registration No. 4,819,802), or the words "Paddle Pals" or "Paddle Pal," other than genuine products manufactured or distributed by Sport Dimension or its authorized manufacturers and distributors;

c.          destroying, selling off, transferring, or otherwise disposing of any documents, electronically stored information, or financial records or assets of any kind relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any Infringing Products;

d.          using the PADDLE PALS Mark, or the words "Paddle Pals" or "Paddle Pal," on or in connection with any seller alias that any Defendant may own, operate, or control on any marketplace;

e.          any and all use of the PADDLE PALS Mark, or the words "Paddle Pals" or "Paddle Pal," as metatags, on any webpage (including the title of any web page), in any advertising links to other websites, or in search engines' databases or cache memory, as well as any other form of use of

15

such terms that are visible to a computer user or serves to direct computer searches to seller aliases registered, owned, or operated by any Defendant on any marketplace; and

f.     altering, disabling, closing, or transferring ownership of any seller alias of any Defendant or any marketplace during the pendency of this action, or until further Order of the Court.

### Temporary Asset Restraint

2.     Pursuant to Federal Rule of Civil Procedure 64 and 65, as well as New York Civil Practice Laws and Rules 6201, and this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, as sufficient cause has been shown, within five days of receipt of service of this Order, Walmart, Inc. and WhaleCo, Inc., d/b/a Temu, (collectively, the "Financial Institutions") and any domain registrars shall locate all accounts associated with the Defendants (the "Defendants' Accounts") and other assets belonging to the Defendants, including any cryptocurrency, (the "Defendants' Assets") and shall locate, attach, and restrain the transfer or disposing of monies or funds from the Defendants' Accounts, as well as the transfer or disposing of the Defendants' Assets, until further ordered by this Court. The Financial Institutions and domain registrars shall provide written confirmation of their compliance with the foregoing to Sport Dimension.

### Expedited Discovery

3.     Within five days of receipt of this Order, the Financial Institutions and domain registrars shall provide the following information to Sport Dimension's counsel (to the extent such information is in the Financial Institutions' and domain registrars' possession, custody, or control):

a.     identifying information for Defendants, including all available contact information (which shall include, if available, all known email addresses

16

and physical mailing addresses), as well as all associated account numbers and account balances, regardless of the hosting platform or institution;

b.      any user accounts and/or online marketplace websites affiliated with Defendants that are not listed on Schedule A to the sealed Amended Complaint; and

c.      information concerning any of the Defendants' Accounts or the Defendants' Assets including any and all related, connected, or otherwise associated accounts or assets, regardless of the hosting platform or institution.

4.      Sport Dimension is authorized to conduct expedited discovery to include serving interrogatories and requests for production of documents, pursuant to Rules 26 and 33, and 34 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern District of New York.  Any Defendant who is served with this Order shall provide written responses under oath to such interrogatories and produce documents requested within seven days of service to Sport Dimension's counsel.

**Security Bond**

5.      Sport Dimension shall deposit with the Court $12,000.00[4] in cash, cashier's check, or surety bond, as security, which amount was determined adequate for the payment of such

---

[4] Sport Dimension requested that the Court require that it pay $1,500 in security, but that amount is insufficient considering the number of Defendants and the nature of the claims at issue. *See* Fed. R. Civ. P. 65(c) ("[T]he movant [must] give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.").

17

damages as any person may be entitled to recover as a result of a wrongful restraint hereunder.

### Sealing Order

6.  Sport Dimension's unredacted version of the Amended Complaint, Dkt. 26, Exhibit 2 to the Amended Complaint, Dkt. 28, Exhibit 1 to the Declaration of Shengmao Mu dated June 5, 2026, Dkt. 27, the Supplemental Declaration of Shengmao Mu dated June 12, 2026, and attached exhibits, Dkt. 31, and the letter of Shengmao Mu dated June 15, 2026, and attached exhibits, Dkt. 33, shall be sealed and remain sealed until the Defendants' Accounts and the Defendants' Assets are restrained.

7.  Sport Dimension shall publicly file an unredacted version of the Amended Complaint, Dkt. 26, Exhibit 2 to the Amended Complaint, Dkt. 28, Exhibit 1 to the Declaration of Shengmao Mu dated June 5, 2026, Dkt. 27, the Supplemental Declaration of Shengmao Mu dated June 12, 2026, and attached exhibits, Dkt. 31, and the letter of Shengmao Mu dated June 15, 2026, and attached exhibits, Dkt. 33, using the CM/ECF system the earlier of (1) the expiration of this Order or (2) when the Financial Institutions and domain registrars have confirmed that the Defendants' Accounts and the Defendants' Assets are frozen and Sport Dimension has properly served all Defendants with the Summons and the Amended Complaint.

### Application to Vacate or Dissolve

8.  Any Defendant that is subject to this Order may appear and move to dissolve or modify this Order on two days' notice to Sport Dimension or on shorter notice as set by this Court.

It is further ordered that a telephonic hearing shall be held on July 8, 2026, at 2:00 p.m., concerning Sport Dimension's request for issuance of a preliminary injunction. At that time, counsel for all parties should call (855) 244-8681, access code 2302 755 2307. At the hearing, any Defendant may be heard as to opposition to Sport Dimension's application for a preliminary injunction. At such time, the Court will also discuss Sport Dimension's pending motion to seal documents

relating to its initial application for emergency relief. *See* Dkt. 8.

The Temporary Restraining Order issued herein shall remain in effect for fourteen days.

The Clerk of Court is respectfully directed to close Docket Numbers 9, 21, and 22.

SO ORDERED.

Dated: June 24, 2026
      New York, New York

JOHN P. CRONAN
United States District Judge